STAMP & RETURN

## IN THE CIRCUIT COURT
## FOR PRINCE GEORGE'S COUNTY, MARYLAND

MARIO ERNESTO AMAYA,
8600 Sumter Lane
Clinton, MD 20735

and

JOSE NORLAND GONZALEZ,
6917 Decatur Place
Hyattsville, MD 20784

and

JOSE AMADEO CASTILLO,
4204 Fairglen Drive
Alexandria, VA 22309

      Plaintiffs

v.

DGS CONSTRUCTION, LLC,
d/b/a SCHUSTER CONCRETE
CONSTRUCTION,

      <u>Serve:</u>
      Loraine L. Burns
      3717 Crondall Lane
      Owings Mills, MD 21117

and

THE WHITING TURNER
CONTRACTING COMPANY,

      <u>Serve:</u>
      Timothy J. Regan
      300 E. Joppa Road
      Towson, MD 21286

      Defendants

Case No.: CALI6-28738

Clerk of the
Circuit Court

2016 JUL 15 PM 3: 17

1

## CLASS ACTION COMPLAINT

Plaintiffs Mario Enrnesto Amaya, Jose Norland Gonzalez, and Jose Amadeo Castillo ("Plaintiffs"), through their undersigned attorneys, file this Class Action Complaint against Defendant, DGS Construction, LLC, d/b/a Schuster Concrete Construction ("Schuster") and the Whiting Turner Contracting Company ("Whiting Turner"), and allege the following:

### Introduction

1.      Plaintiffs are former employees of Defendant Schuster who worked among at least three hundred (300) other carpenters during the ongoing construction of the MGM Resort Casino at National Harbor for a period of several months during 2015 and 2016. Plaintiffs bring this class action against Defendants Schuster and Whiting Turner for the benefit and protection of two classes: (1) all current and former individuals employed by Defendant Schuster at the MGM Resort Casino at National Harbor in any of the classifications of a craft worker who worked any overtime hours; and (2) all current and former individuals employed by Defendant Schuster who performed carpentry work at the MGM Resort Casino at National Harbor for Defendant Schuster. Plaintiffs bring this class action on behalf of themselves and all other similarly-situated persons to obtain damages, restitution, as well as other relief for the proposed classes as defined below.

2.      This action is brought to remedy violations of Maryland contract law; the Maryland Wage and Hour Law ("MWHL"), Md. Code, Labor & Employ. §§ 3-401, *et seq.*; and the Maryland Wage Payment and Collections Law ("MWPCL"),

Md. Code, Labor & Employ. §§ 3-501, *et seq.* in connection with Defendants' misconduct.

3.    Plaintiffs are third-party beneficiaries to a contract executed by Defendants. The contract set the appropriate compensation owed to Plaintiffs and the putative class members for their work for Defendant Schuster at the MGM Resort Casino at National Harbor. Defendant Schuster undercompensated them, and Defendant Whiting Turner failed to assure proper compliance with the contract, resulting in both Defendants being in breach of the contract at issue.

4.    Plaintiffs also assert claims under the MWHL for Defendant Schuster's failure to pay them at the appropriate rates for overtime worked and for its failure to pay them a proper contractually agreed-upon wage and fringe benefit under the MWPCL.

5.    Plaintiffs seek on behalf of themselves and the putative class members actual damages, statutory damages, attorneys' fees, costs, and all other relief available to the classes as defined herein.

## The Parties

6.    Plaintiff Mario Ernesto Amaya is a resident of the State of Maryland who resides at 8600 Sumpter Lane, Clinton, Maryland 20735. He was employed by Defendant DGS Construction, LLC d/b/a Schuster Concrete Construction, and brings this action to recover unpaid wages, fringe benefits, and other relief.

7.    Plaintiff Jose Norland Gonzalez is a resident of the State of Maryland, who resides at 6917 Decatur Place, Hyattsville, Maryland 20784. He was employed

by Defendant DGS Construction, LLC d/b/a Schuster Concrete Construction, and brings this action to recover unpaid wages, fringe benefits, and for other relief.

8.     Plaintiff Jose Amadeo Castillo is a resident of the Commonwealth of Virginia, who resides at 4204 Fairglen Drive, Alexandria, Virginia 22309. He was employed by Defendant DGS Construction, LLC d/b/a Schuster Concrete Construction, and brings this action to recover unpaid wages, fringe benefits, and for other relief.

9.     Defendant Whiting Turner Contacting Company is a Maryland corporation with its principal place of business located at 300 E. Joppa Road, Baltimore, Maryland 21286. Whiting Turner is the Project Contractor on the MGM National Harbor construction project.

10.     Defendant DGS Construction, LLC, is a Maryland limited liability company with its principal place of business located at 3717 Crondall Lane, Owings Mills, Maryland 21117. With respect to the actions at issue in this case, DGS Construction, LLC conducted business using the trade name Schuster Concrete Construction.  Schuster is a contractor for Whiting-Turner on the MGM National Harbor construction project.

### Jurisdiction and Venue

11.     This Court has jurisdiction over this action under Md. Code, Cts. & Jud. Proc. § 1-501.

12.     This Court has jurisdiction over the parties to this action under Md. Code, Cts. & Jud. Proc. § 6-102, as the Defendants were organized under the laws of Maryland and the actions at issue in this case occurred in Maryland.

13.     This Court is a proper venue for this action under Md. Code, Cts. & Jud. Proc. § 6-201, as the Defendants carry on a regular business in Prince George's County and the actions at issue in this case occurred in Prince George's County.

### Facts Common to All Counts

A.      Defendants are subject to a Project Labor Agreement.

14.     In 2014, construction commenced on a $1.3 billion project to construct an MGM casino, hotel, and resort at National Harbor. The project is not yet complete and is still ongoing. There is an estimated 3,600 employees in various crafts and trades working on the project.

15.     On or about April 30, 2014, the Project Contractor, Defendant Whiting Turner, entered into a written contract with various trade unions entitled, "Project Labor Agreement for MGM Resort Casino at National Harbor" ("the Agreement").

16.     The purpose of the Agreement, in part, was to "mutually establish wages, hours and working conditions for the craft workers of Signatories." (Ag. § 1.6.)

17.     "Signatories," under the Agreement, include the Project Contractor, Whiting Turner; the trade unions that signed the Agreement; and "all construction contractors and subcontractors of whatever tier engaged in onsite construction work

within the scope of this Agreement that sign this Agreement or a letter of assent thereto." (Ag. § 1.2.)

18.    The Agreement mandates that "the Project Contractor[, Whiting Turner,] shall require all contractors or subcontractors who have been awarded contracts for work covered by this Agreement to accept and be bound by the terms and conditions of this Project Agreement by executing the Letter of Assent (in the form of the letter included as Appendix 'B') prior to commencing work." (Ag. § 2.1.1.)

19.    Further, the Agreement requires that "[t]he Project Contractor[, Whiting Turner,] shall assure compliance with this Agreement by the Signatories." (Ag. § 2.1.1.)

20.    Defendant Schuster is a contractor on the MGM National Harbor project.

21.    Schuster signed a Letter of Assent under the Agreement.

22.    As such, Schuster is a Signatory to the Agreement and is bound by the terms and conditions of the Agreement.

23.    Furthermore, as the Project Contractor, Whiting Turner is obligated to assure Schuster's compliance with the Agreement.

B.    **The Agreement requires contractors to, at a minimum, pay prevailing wage rates as determined by the Maryland Department of Labor, Licensing and Regulation ("DLLR") for Prince George's County.**

24.    The Agreement requires contractors to pay prevailing wage and corresponding fringe benefits as issued by the Maryland Department of Labor, Licensing and Regulation for Prince George's County for building construction.

6

25.    The Agreement expressly states:

For all contractors working on the Project, payment of the prevailing wages
and fringe benefit rates of the project as indicated on the Maryland
Department of Labor, Licensing, and Regulation Informational Wage Rate for
Prince George's County determined at the commencement of the Project,
which Developer[, MGM National Harbor, LLC,] has voluntarily adopted for
the Project, shall be a minimum requirement and contractors are free to
provide wages and fringe benefits at rates in excess of such prevailing rates.

(Ag. § 12.5.)

26.    At the commencement of the project, the prevailing wage rates for
carpenters as determined by DLLR was $26.81 per hour for regular time, $40.22 per
hour for overtime, and a fringe benefit of $8.19 per hour for each hour worked.

27.    Fringe benefit rates for other worker classifications, including laborers,
are also set by DLLR.

C.    **Defendant Schuster failed to pay Plaintiffs at the required
      prevailing wage rates.**

*Plaintiff Mario Ernesto Amaya.*

28.    Plaintiff Mario Ernesto Amaya is a carpenter by trade.

29.    In 2015, he applied to and was hired by Schuster for the position of
carpenter.

30.    In 2015-2016, Mr. Amaya worked for Schuster as a carpenter on the
MGM National Harbor project.

31.    As such, Mr. Amaya is a third-party beneficiary of the Agreement.

32.    Mr. Amaya is a professional carpenter, was hired by Schuster as a
carpenter, and worked all hours for Schuster as a carpenter.

7

33.    Schuster failed to pay Mr. Amaya for all hours worked at the required prevailing wage rate for carpenters.

34.    Schuster paid Mr. Amaya for only some hours worked at the required carpenter's rate of $26.81 per hour for regular time and $40.22 per hour for overtime.

35.    For some hours that Mr. Amaya worked as a carpenter, Schuster paid him at the rate of a laborer, which is lower than the required carpenter's rate of $26.81 per hour for regular time and $40.22 per hour for overtime.

36.    The varying pay rates provided by Schuster were arbitrary. At all times relevant to this action, Mr. Amaya was employed by, and worked for, Schuster as a carpenter and performed carpentry work.

37.    Further, Schuster failed to pay Mr. Amaya the required fringe benefit of $8.19 per hour for each hour worked.

38.    Specifically, Schuster failed to pay Mr. Amaya the required fringe benefit for overtime hours.

39.    In fact, regardless of whether Mr. Amaya was properly compensated as a carpenter or improperly underpaid as a misclassified laborer, he received no fringe benefits whatsoever for any of the overtime hours he worked.

40.    Schuster's actions were in breach of its obligations under the Agreement, and caused Mr. Amaya to incur monetary damages.

*Plaintiff Jose Norland Gonzalez.*

41.    Plaintiff Jose Norland Gonzalez is a carpenter by trade.

42.   In 2015, he applied to and was hired by Schuster for the position of carpenter.

43.   In 2015-2016, Mr. Gonzalez worked for Schuster as a carpenter on the MGM National Harbor project.

44.   As such, Mr. Gonzalez is a third-party beneficiary of the Agreement.

45.   Mr. Gonzalez is a professional carpenter, was hired by Schuster as a carpenter, and worked all hours for Schuster as a carpenter.

46.   Schuster failed to pay Mr. Gonzalez for all hours worked at the required prevailing wage rate for carpenters.

47.   Schuster paid Mr. Gonzalez for only some hours worked at the required carpenter's rate of $26.81 per hour for regular time and $40.22 per hour for overtime.

48.   For some hours that Mr. Gonzalez worked as a carpenter, Schuster paid him at the rate of a laborer, which is lower than the required carpenter's rate of $26.81 per hour for regular time and $40.22 per hour for overtime.

49.   The varying pay rates provided by Schuster were arbitrary. At all times relevant to this action, Mr. Gonzalez was employed by, and worked for, Schuster as a carpenter and performed carpentry work.

50.   Further, Schuster failed to pay Mr. Gonzalez the required fringe benefit of $8.19 per hour for each hour worked.

51.   Specifically, Schuster failed to pay Mr. Amaya the required fringe benefit for overtime hours.

52.     In fact, regardless of whether Mr. Gonzalez was properly compensated as a carpenter or improperly underpaid as a misclassified laborer, he received no fringe benefits whatsoever for any of the overtime hours he worked.

53.     Schuster's actions were in breach of its obligations under the Agreement, and caused Mr. Gonzalez to incur monetary damages.

*Plaintiff Jose Amadeo Castillo.*

54.     Plaintiff Jose Amadeo Castillo is a carpenter by trade.

55.     In 2015, he applied to and was hired by Schuster for the position of carpenter.

56.     In 2015-2016, Mr. Castillo worked for Schuster as a carpenter on the MGM National Harbor project.

57.     As such, Mr. Castillo is a third-party beneficiary of the Agreement.

58.     Mr. Castillo is a professional carpenter, was hired by Schuster as a carpenter, and worked all hours for Schuster as a carpenter.

59.     Schuster failed to pay Mr. Castillo for all hours worked at the required prevailing wage rate for carpenters.

60.     Schuster paid Mr. Castillo for only some hours worked at the required carpenter's rate of $26.81 per hour for regular time and $40.22 per hour for overtime.

61.     For some hours that Mr. Castillo worked as a carpenter, Schuster paid him at the rate of a laborer, which is lower than the required carpenter's rate of $26.81 per hour for regular time and $40.22 per hour for overtime.

62.     The varying pay rates provided by Schuster were arbitrary. At all times relevant to this action, Mr. Castillo was employed by, and worked for, Schuster as a carpenter and performed carpentry work.

63.     Further, Schuster failed to pay Mr. Castillo the required fringe benefit of $8.19 per hour for each hour worked.

64.     Specifically, Schuster failed to pay Mr. Amaya the required fringe benefit for overtime hours.

65.     In fact, regardless of whether Mr. Castillo was properly compensated as a carpenter or improperly underpaid as a misclassified laborer, he received no fringe benefits whatsoever for any of the overtime hours he worked.

66.     Schuster's actions were in breach of its obligations under the Agreement, and caused Mr. Castillo to incur monetary damages.

D.     **Class action allegations.**

67.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated in two Classes, defined as follows:

   a. All current and former employees who were employed in any craft worker classification by Defendant Schuster at the MGM Resort Casino at National Harbor and worked overtime hours. ("Overtime Fringe Benefit Class"); and

   b. All current and former employees who were employed by Defendant Schuster at the MGM Resort Casino at National Harbor and performed carpentry work ("Carpenter Class").

68.    This action is brought and may properly be maintained as a class action. This action satisfies the numerosity, typicality, adequacy, predominance and/or superiority requirements under applicable law.

69.    *Numerosity.*  The members of each of the two Classes number in at least the hundreds. As a result, each Class is so numerous that joinder of all members in a single action is impracticable. The members of each Class are readily identifiable from information and records in Schuster's possession, custody, or control, including payroll records. The disposition of these claims will provide substantial benefits to each Class.

70.    *Commonality/Predominance.*  There is a well-defined community of interest and common questions of law and fact, which predominate over any questions affecting only individual members of each Class. These common legal and factual questions, which do not vary from members of each Class, and which may be determined without reference to the individual circumstances of members of each Class, include, but are not limited to, the following:

    a. Whether Schuster violated the Agreement  with respect to the Plaintiffs and the Overtime Fringe Benefit Class members by failing to pay them fringe benefits for overtime hours worked;

    b. Whether Schuster violated the Agreement with respect to the Plaintiffs and the Carpenter Class members by misclassifying them at times as laborers in order to underpay them below the legally-required compensation rates;

    c. Whether Schuster's conduct constituted a breach of the Agreement with respect to the Plaintiffs and members of each Class as third-party beneficiaries of the Agreement;

    d. Whether Schuster's conduct violated the MWHL;

e. Whether Schuster's conduct violated the MWPCL;

f. Whether Whiting Turner properly assured compliance with the Agreement by Schuster with respect to Schuster's contractual obligations to properly compensate the Plaintiffs and the members of each Class or whether it failed to do so and therefore violated its contractual obligations to the Plaintiffs and the members of each Class, entitling them to compensation and statutory relief; and

g. Whether, as a result of Schuster's misconduct and Whiting Turner's failure to assure the compliance of Schuster, Plaintiffs and the members of each Class are entitled to damages, restitution, equitable relief, and/or other damages and relief from Defendants jointly and severally, and, if so, the amount and nature of such relief.

71.     *Typicality.*  The representative Plaintiffs' claims are typical of the claims of each Class because Plaintiffs and the members of each Class were injured by the same wrongful practices in which Defendants have engaged and are based on the same legal theories. The only difference may be the amount of damages sustained by the members of each Class, which can be determined readily, and does not bar Class certification.

72.     *Adequacy of Representation.*  Plaintiffs will fairly and adequately protect and pursue the interests of the members of each Class.  Plaintiffs understand the nature of the claims herein, and their role in these proceedings, and will vigorously represent the interests of each Class.  Plaintiffs have retained class counsel who are experienced and qualified in prosecuting class actions and other forms of complex litigation. Neither Plaintiffs nor their attorneys have interests which are contrary to or conflict with those of either Class.

73.     *Superiority/Manageability.*  A class action is superior to all other available methods for the fair and efficient adjudication of this action because

13

individual litigation of the claims of members of each Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class may be in the millions of dollars, the individual damages incurred by each member of either Class resulting from Defendants' wrongful conduct are likely too small to warrant the expense of individual suits. The likelihood of individual members of either Class prosecuting separate claims is remote and, even if every person could afford individual litigation, the Court would be unduly burdened by individual litigation of such cases. Individual members of each Class do not have significant interests in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the Court resulting from multiple trials of the same factual issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to each Class would be proper.

### Count I – Declaratory Judgment
### (Against Defendants Schuster and Whiting Turner)

74.    The Plaintiffs incorporate by reference the substance of all the foregoing factual allegations.

75.    This declaratory judgment action is brought pursuant to Md. Code, Cts. & Jud. Proc. §§ 3-406 and 3-407 for the purpose of determining questions of actual

controversy between the parties and terminating uncertainty and controversy giving rise to this proceeding.

76.     On or about April 30, 2014, Defendant Whiting Turner entered into the Agreement.

77.     Defendant Schuster—a contractor on the MGM National Harbor project—signed a Letter of Assent under the Agreement, and thereby became a signatory under the Agreement and is bound by the terms and conditions of the Agreement.

78.     The purpose of the Agreement, in part, was to "mutually establish wages, hours and working conditions for the craft workers of Signatories" on the MGM National Harbor project. (Ag. § 1.6.)

79.     The Agreement requires contractors to pay prevailing wage and corresponding fringe benefits as issued by the Maryland Department of Labor, Licensing and Regulation for Prince George's County for building construction.

80.     With respect to payment of wages and fringe benefits, the Agreement states:

> For all contractors working on the Project, payment of the prevailing wages and fringe benefit rates of the project as indicated on the Maryland Department of Labor, Licensing, and Regulation Informational Wage Rate for Prince George's County determined at the commencement of the Project, which Developer[, MGM National Harbor, LLC,] has voluntarily adopted for the Project, shall be a minimum requirement and contractors are free to provide wages and fringe benefits at rates in excess of such prevailing rates.

(Ag. § 12.5.)

81.     The Agreement was intended to benefit the craft workers of contractors on the MGM National Harbor project by requiring that the contractors

15

pay their workers—at a minimum—the prevailing wage rates and fringe benefits as determined by DLLR for Prince George's County.

82.    It is clear from the terms of the Agreement that the parties to the Agreement intended to recognize craft workers of contractors on the MGM National Harbor project as primary parties in interest with respect to the terms and conditions of the Agreement.

83.    Recognition of a right to performance in the craft workers of contractors on the MGM National Harbor project is appropriate in order to effectuate the intention of the parties to the Agreement.

84.    The performance of the promise of contractors to pay prevailing wages and fringe benefits satisfies an obligation of the contractors to pay money to their craft workers.

85.    It is clear from the terms of the Agreement that the signatories to the Agreement—particularly contractors on the MGM National Harbor project— intended to give craft workers the benefit of the promise to pay prevailing wages and fringe benefits.

86.    Plaintiffs and all members of each Class are craft workers of a contractor on the MGM National Harbor project, namely, Schuster.

87.    As such, Plaintiffs and all members of each Class are third-party beneficiaries of the Agreement and are entitled to enforce the terms and conditions of the Agreement.

16

88.     There therefore exists an actual controversy concerning justiciable issues between Plaintiffs and all members of each putative Class and Defendants within the jurisdiction of this Court, involving the issue of whether Plaintiffs and the members of each Class are third-party beneficiaries of the Agreement with a right to enforce the terms and conditions of the Agreement.

89.     Antagonistic claims are present between the parties. Those claims indicate imminent and inevitable litigation.

90.     Under §§ 3-401 through 3-415 of the Courts and Judicial Proceedings Article, Plaintiffs are entitled to a judgment declaring the rights and responsibilities of the Plaintiffs and Defendants with respect to the Agreement, and further settling the legal relations, rights, and responsibilities of the parties.

WHEREFORE, the Plaintiffs demand that the Court:

a.     Certify this case as a class action for each of the Classes and appoint Plaintiffs and their counsel to represent each Class;

b.     Issue a declaratory judgment that Plaintiffs and the other members of each Class are third-party beneficiaries of the Agreement and are entitled to enforce the terms and conditions of the Agreement;

c.     Award the Plaintiffs their reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

d.     Award the Plaintiffs and the other members of each Class such other and further relief as in law and justice they may be entitled to receive.

17

## Count II – Breach of Contract
### (Against Defendants Schuster and Whiting Turner)

91.  The Plaintiffs incorporate by reference the substance of all the foregoing factual allegations.

92.  On or about April 30, 2014, Defendant Whiting Turner entered into the Agreement.

93.  Defendant Schuster—a contractor on the MGM National Harbor project—signed a Letter of Assent under the Agreement, and thereby became a signatory under the Agreement and is bound by the terms and conditions of the Agreement.

94.  As former employees of Schuster who worked on the MGM National Harbor project, Plaintiffs and the members of each Class are third-party beneficiaries of the Agreement.

95.  The Agreement requires contractors to pay prevailing wage and corresponding fringe benefits as issued by the DLLR for Prince George's County for building construction.

96.  With respect to payment of wages and fringe benefits, the Agreement states:

> For all contractors working on the Project, payment of the prevailing wages and fringe benefit rates of the project as indicated on the Maryland Department of Labor, Licensing, and Regulation Informational Wage Rate for Prince George's County determined at the commencement of the Project, which Developer[, MGM National Harbor, LLC,] has voluntarily adopted for the Project, shall be a minimum requirement and contractors are free to provide wages and fringe benefits at rates in excess of such prevailing rates.

(Ag. § 12.5.)

18

97.    At the commencement of the project, the prevailing wage rate for carpenters as determined DLLR was $26.81 per hour for regular time, $40.22 per hour for overtime, and a fringe benefit of $8.19 per hour for each hour worked.

98.    Plaintiffs and the Class members were employed by Schuster as carpenters and worked on the MGM National Harbor project in 2015-2016.

99.    Plaintiffs and the Carpenter Class members are professional carpenters, were hired by Schuster to work as carpenters, and worked all hours for Schuster as a carpenters.

100.    Schuster failed to pay Plaintiffs and the Carpenter Class members for all hours worked at the required prevailing wage rate for carpenters.

101.    Schuster paid Plaintiffs and the Carpenter Class members for only some hours worked at the required carpenter's rate of $26.81 per hour for regular time and $40.22 per hour for overtime.

102.    For some hours that Plaintiffs and the Carpenter Class members worked as carpenters, Schuster paid them at the rate of laborers, which is lower than the required carpenter's rate of $26.81 per hour for regular time and $40.22 per hour for overtime.

103.    The varying pay rates provided by Schuster were arbitrary. At all times relevant to this action, Plaintiffs and the Carpenter Class members were employed by, and worked for, Schuster as carpenters and performed carpentry work.

104. Further, Schuster failed to pay Plaintiffs and the Overtime Fringe Benefit Class members the required fringe benefit of $8.19 per hour for each hour worked.

105. Specifically, Schuster failed to pay Plaintiffs and the Overtime Fringe Benefit Class any fringe benefits on overtime hours worked.

106. Schuster therefore breached the Agreement.

107. Furthermore, Whiting Turner breached the provision of the Agreement requiring it to "assure compliance with this Agreement by the Signatories." (Ag. § 2.1.1.)

108. As a result of the above breaches of the Agreement, Plaintiffs and the members of each Class incurred monetary damages.

WHEREFORE, the Plaintiffs demand that the Court:

a. Certify this case as a class action for each of the Classes and appoint Plaintiffs and their counsel to represent each Class;

b. Enter judgment in favor of Plaintiffs and the other members of each Class, and against Defendants, and award damages to Plaintiffs and the other Class members in an amount exceeding $75,000;

c. Issue a declaratory judgment that Plaintiffs and the other Class members are third-party beneficiaries of the Agreement and are entitled to enforce the terms and conditions of the Agreement;

d. Award Plaintiffs their reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

e.      Award the Plaintiffs and the other Class members such other and further relief as in law and justice they may be entitled to receive.

### Count III – Violation of MWHL
### (Against Defendant Schuster)

109.   The Plaintiffs incorporate by reference the substance of all the foregoing factual allegations.

110.   The MWHL requires that covered employees receive "overtime wage of at least 1.5 times the usual hourly wage" for hours worked over 40 in a single week." *See* Md. Code, Labor & Employ. § 3-415(a).

111.   Plaintiffs and other members of the Carpenter Class are covered employees of Defendant Schuster entitled to the MWHL's protections.

112.   Defendant Schuster is an employer covered by the MWHL.

113.   Defendant Schuster violated the MWHL by failing to compensate Plaintiffs and the members of the Carpenter Class with the legally mandated overtime premium.

114.   In violating the MWHL, Defendant Schuster acted willfully and with reckless disregard of clearly applicable MWHL provisions.

WHEREFORE, the Plaintiffs demand that the Court:

a.      Certify this case as a class action for each of the Classes and appoint Plaintiffs and their counsel to represent each Class;

b.      Enter judgment in favor of Plaintiffs and the other Carpenter Class members, and against Defendant Schuster, and award damages to Plaintiffs and the other Carpenter Class members in an amount exceeding $75,000;

21

c.      Award Plaintiffs and the other Carpenter Class members actual damages and statutory damages under the MWHL;

d.      Award Plaintiffs their reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

e.      Award the Plaintiffs and the other members of each Class such other and further relief as in law and justice they may be entitled to receive.

### Count IV – Violation of the MWPCL
### (Against Defendant Schuster)

115.    The Plaintiffs incorporate by reference the substance of all the foregoing factual allegations.

116.    Defendant Schuster was and/or is the employer of Plaintiffs and the other members of each Class for purposes of Md. Code, Labor & Employ. § 3-501.

117.    Defendant Schuster failed to uphold its duty to pay all the "wages" as the term is defined in Md. Code, Labor & Employ. § 3-501, including overtime and fringe benefits, to the Plaintiffs and the other members of each Class. By failing to pay the Plaintiffs and the members of each Class all compensation owed, Defendant Schuster violated Md. Code, Labor & Employ. §§ 3-502, 3-505, and 3-508.

118.    Defendant Schuster had a duty to pay whatever wages, as that term is used under the MWPCL, were due to Plaintiffs and the members of each Class on a regular basis.  Defendant Schuster failed to uphold this duty in violation of Md. Code, Labor & Employ. §§ 3-502, 3-505, 3-508. This failure to properly compensate its employees includes wages owed at both the regular rate of pay and overtime

22

rate owed at time and half the regular rate under the MWHL, as well as properly compensating Plaintiffs and the members of each Class for all fringe benefits earned, and are in contravention of the MWPCL. *See* Md. Code, Labor & Employ. §§ 3-502; 3-505; and 3-508.

119.   Defendant Schuster's failure to comply with obligations under the Maryland Labor and Employment Code was willful, intentional, not in good faith, and not because of a *bona fide* dispute.

120.   Defendant Schuster's conduct constitutes violations of the MWPCL, Md. Code, Labor & Employ. §§ 3-501, *et seq.*, subjecting it to the MWPCL's treble damages provisions under § 3-507.2.

WHEREFORE, the Plaintiffs demand that the Court:

a.   Certify this case as a class action for each of the Classes and appoint Plaintiffs and their counsel to represent each Class;

b.   Enter judgment in favor of Plaintiffs and the other members of each Class, and against Defendant Schuster, and award damages to Plaintiffs and the other Class members in an amount exceeding $75,000;

c.   Award Plaintiffs and the other members of each Class actual damages and statutory damages under the MWPCL;

d.   Award Plaintiffs their reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

e.   Award the Plaintiffs and the other members of each Class such other and further relief as in law and justice they may be entitled to receive.

23

### Count V – Unjust Enrichment
### (Against Defendant Schuster)

121.   The Plaintiffs incorporate by reference the substance of all the foregoing factual allegations.

122.   Throughout the relevant period, Plaintiffs and other members of each Class routinely were required to perform day-to-day work activities and were undercompensated.

123.   As a result, Plaintiffs and the other members of each Class were routinely denied wages and/or fringe benefits owed.

124.   Defendant Schuster received a direct and substantial benefit from the work Plaintiffs and the other member of each Class performed on behalf of Defendant Schuster under circumstances that do not support Defendant Schuster's entitlement to those funds.

125.   Permitting Defendant Schuster to retain the direct and substantial benefit it received from Plaintiffs and the other members of each Class under these circumstances would be inequitable because: Defendant Schuster was not entitled to the funds at issue; the retained funds represent a substantial windfall to Defendant Schuster; Defendant Schuster's practices caused Plaintiffs and the other members of each Class to suffer more than a *de minimis* injury; and Defendant Schuster was able to retain the funds at issue only because of its control over the wages and fringe benefits of Plaintiffs and the other members of each Class.

WHEREFORE, the Plaintiffs demand that the Court:

24

a.    Certify this case as a class action for each of the Classes and appoint Plaintiffs and their counsel to represent each Class;

b.    Enter judgment in favor of Plaintiffs and the other members of each Class, and against Defendant Schuster, and award damages to Plaintiffs and the other Class members in an amount exceeding $75,000;

c.    Award Plaintiffs their reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

d.    Award the Plaintiffs and the other members of each Class such other and further relief as in law and justice they may be entitled to receive.

## JURY DEMAND

COME NOW the Plaintiffs, Mario Enrnesto Amaya, Jose Norland Gonzalez, and Jose Amadeo Castillo, by and through counsel, and demand a trial by jury as to all issues triable by jury in this matter.

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

Brian J. Markovitz
Joseph M. Creed
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200
bmarkovitz@jgllaw.com
jcreed@jgllaw.com
*Counsel for Plaintiffs*

25