UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| MARIO ERNESTO AMAYA and<br>JOSE NORLAND GONZALEZ,<br><br>    Plaintiffs,<br><br>    v.<br><br>DGS CONSTRUCTION, LLC,<br>d/b/a SCHUSTER CONCRETE<br>CONSTRUCTION,<br><br>    Defendant. | Civil Action No. TDC-16-3350 |

**MEMORANDUM OPINION**

On June 17, 2021, after a four-day trial, a jury returned a verdict in favor of Plaintiffs Mario Ernesto Amaya and Jose Norland Gonzalez, the named plaintiffs in this class action lawsuit, on two claims of unjust enrichment arising from their employment by DGS Construction, LLC d/b/a Schuster Concrete Construction ("Schuster") on the construction of the MGM Resort Casino in Oxon Hill, Maryland ("the MGM Project"). Schuster has filed a Motion for a Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b) on one of the two claims, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED.

**BACKGROUND**

Schuster was a subcontractor on the MGM Project, for which the Whiting-Turner Contracting Company ("Whiting-Turner") was the general contractor. Plaintiffs were carpenters who worked for Schuster on the MGM Project. Whiting-Turner had entered into a Project Labor Agreement ("the PLA") with 16 trade unions under which Whiting-Turner generally agreed to

require that all contractors or subcontractors which were awarded contracts for work on the MGM Project become a "Signatory" to the PLA and agree to be bound by its terms, which included a requirement that "[a]ll craft employees employed by a Signatory to perform work covered by this Agreement on the Project, shall be paid the wages and fringe benefits as stipulated in the [collective bargaining agreements]." PLA ¶ 8.1, Trial Ex. 5. The PLA also provided that under certain circumstances, a subcontractor that did not employ union workers could be engaged to work on the MGM Project and be exempted from the requirements of the PLA, subject to the following:

> Exemption from this Agreement shall not automatically relieve the successful bidder from complying with Project based requirements, such as, but not limited to, safety and quality programs. For all contractors working on the project, payment of prevailing wages and fringe benefit rates of the project as indicated on the Maryland Department of Labor, Licensing, and Regulation Informational Wage Rate for Prince George's County determined at the commencement of the Project, which Developer has voluntarily adopted for the Project, shall be a minimum requirement and contractors are free to provide wages and fringe benefits at rates in excess of such prevailing rates.

PLA ¶ 12.5.

When Schuster, a non-union subcontractor, secured a subcontract to perform concrete work on the MGM Project, it entered into an agreement with Whiting-Turner that included a Project Manual containing a requirement, consistent with the PLA, that Schuster must pay its workers pursuant to a designated schedule consisting of wage rates that "were voluntarily adopted for the Project by Developer" and were "derived from those listed by the Department of Labor, Licensing and Regulation, Informational Wage Rates for Prince George's County." Trial Ex. 1. The schedule, labeled as "S.3: Project Labor Minimum Wage Rates" ("the S.3 schedule"), listed for each job classification both a "Basic Hourly Rate" and a "Fringe Benefit Payment." Id. at 8. For example, for the carpenter job classification, the Basic Hourly Rate was $26.81 and the Fringe Benefit Payment was $8.19. For each straight-time hour, Schuster paid its carpenters both

2

amounts, for a total of $35.00 per straight-time hour. For overtime hours, however, it did not include the $8.19 fringe benefit payment.

The unjust enrichment claim at issue on the Motion ("the overtime fringe benefits claim") is that Schuster failed to pay fringe benefit amounts on overtime hours worked by Plaintiffs and other class members (collectively, "the overtime fringe benefits class"). The specific trial evidence relevant to the resolution of the Motion will be described below.

## DISCUSSION

In its Rule 50(b) Motion, Schuster seeks judgment as a matter of law on the overtime fringe benefits claim, on which the jury found in favor of Plaintiffs. Schuster largely rehashes the same arguments it made on this issue in its oral motions for judgment as a matter of law under Rule 50(a) at the close of Plaintiffs' case and at the close of the evidence. The Court therefore incorporates by reference its oral ruling on those motions, as stated on the record. 6/16/21 Trial Tr. at 232-38, ECF No. 304. Upon consideration and reconsideration of Schuster's arguments, the Court again concludes that there was sufficient evidence to support the jury's verdict on the overtime fringe benefits claim and will therefore deny the Motion.

### I. Legal Standard

A district court may overturn a jury verdict by rendering judgment as a matter of law only if there is no "legally sufficient evidentiary basis to find for the [prevailing] party on that issue." Fed R. Civ. P. 50(a). Thus, a party is entitled to judgment as a matter of law under Rule 50 only "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996) (citations omitted). In determining whether the non-moving party has carried its burden as a matter of law, the district court "may not substitute [its] judgment for that of the jury or make

credibility determinations." *Id.*; *see generally* U.S. Const. amend VII (guaranteeing the right to a civil trial by jury and requiring that "no fact tried by a jury ... shall be otherwise re-examined in any Court of the United States"). The court must instead "view the evidence in the light most favorable to the non-moving party and draw legitimate inferences in its favor." *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992). Thus, if there is any evidence on which a reasonable jury could return a verdict in favor of the non-moving party, the court must deny a Rule 50 motion. *Price*, 93 F.3d at 1249–50. However, courts must not merely "rubber stamp" a jury verdict, as they "have a duty to reverse the jury verdict[] if the evidence cannot support it." *Id.* at 1250.

## II.  Unjust Enrichment

Upon consideration of the evidence, the Court finds sufficient evidence to support the jury's finding of unjust enrichment on the overtime fringe benefits claim. In order to establish a claim of unjust enrichment, a plaintiff must prove each of the following elements by a preponderance of the evidence: (1) the plaintiff conferred a benefit on the defendant; (2) there was an appreciation or knowledge by the defendant of the benefit; and (3) the defendant accepted or retained the benefit under circumstances that make it inequitable for the defendant to retain the benefit without the payment of its value. *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007).

### A.  Benefit

On the first element, whether the plaintiff conferred a benefit on the defendant, the benefit could be money, the performance of a service, or avoiding an expense that the defendant otherwise would have incurred. *Id.* at 353; *Everhart v. Miles*, 422 A.2d 28, 31 (Md. Ct. Spec. App. 1980) (finding that plaintiffs' work of making repairs and improvements to the defendant's property

4

constituted a benefit for purposes of unjust enrichment); Restatement (Third) of Restitution and Unjust Enrichment § 9, § 9 cmts. b & f (Am. Law Inst. 2011) (stating that restitution may be provided where one party has performed a service for another, including when that service saves the other a necessary expense). The evidence established that Schuster received a benefit from Plaintiffs, consisting of their services as carpenters or laborers on the MGM Project at the pay provided by Schuster, which did not include the additional hourly amounts for fringe benefit payments on their overtime hours ("the overtime fringe benefit amounts"). Based on the trial evidence, including Gonzalez's trial testimony, it is undisputed that Plaintiffs provided these services to Schuster. Indeed, Schuster stipulated that it did not pay the overtime fringe benefit amounts.

### B. Appreciation or Knowledge of the Benefit

On the second element, whether the defendant had an appreciation or knowledge of the benefit, the defendant need not have had knowledge of the benefit precisely at the time it was received. *Hill*, 936 A.2d at 354. As long as the defendant at some point after receiving the benefit became aware of it and had an opportunity to decline or return the benefit, this element is satisfied. *Id.* ("The essence of the requirement that the defendant have knowledge or appreciation of the benefit is that the defendant have an opportunity to decline the benefit."). Here, the evidence was sufficient to establish that Schuster was aware that it received this benefit because it employed Plaintiffs, oversaw their work, and paid them. Schuster Chief Financial Officer Lorraine Burns acknowledged that the payments to workers on the MGM Project did not include fringe benefit payments on overtime hours. Where Schuster was plainly aware that it had received the benefit of Plaintiffs' services without having included the overtime fringe benefit amounts, and could have effectuated the return of the benefit by paying such compensation to the class members at a later

point, there was sufficient evidence to satisfy this element. *See Everhart*, 422 A.2d at 31-32 (upholding a finding of unjust enrichment where in the absence of a contract between the parties addressing payment for improvements, the claimed benefit consisted of repairs and improvements that the plaintiffs had made to land still owned by the defendant, and the defendant knew of the benefit in part because he had observed some of those improvements being made); *Plitt v. Greenberg*, 219 A.2d 237, 239-41 (Md. 1966) (reversing a directed verdict for the defendant and holding that the plaintiff "possess[ed] a colorable cause of action grounded on a theory of unjust enrichment" where the defendant received money from the plaintiff but mistakenly believed that it was from a third-party intermediary rather than from the plaintiff); *see also Bank of Am. Corp. v. Gibbons*, 918 A.2d 565, 567-68, 575-76 (Md. Ct. Spec. App. 2007) (reversing a grant of summary judgment for the defendant on an unjust enrichment claim where the defendant had used funds that her husband had misappropriated from the plaintiff because her "lack of awareness" that the funds . . . resulted from misappropriation" did not mean that she did not know of or appreciate the benefit).

Schuster argues that in order to satisfy both of the first two elements, the evidence must show that Schuster had knowledge not only that it received Plaintiffs' services at the rate paid, but also that it was aware that it had some legal obligation to pay the overtime fringe benefit amounts. On an unjust enrichment claim, however, there is no requirement that the defendant violated a legal requirement when it received a benefit, or that it have a statutory or contractual obligation to return the benefit. *See Hill*, 936 A.2d at 352 (stating that an unjust enrichment claim "serves to deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first place") (citation omitted); *Everhart*, 422 A.3d at 32-33; *Bank of Am. Corp.*, 918 A.2d at 571 (stating that unjust enrichment

does not require a contract or transaction with the plaintiff). Whether Schuster was aware that it was unjust to accept Plaintiffs' work without paying the overtime fringe benefit amounts, because of a legal obligation to make those payments or otherwise, is more appropriately considered on the third element, the requirement that retention of the benefit was inequitable.

Nevertheless, to the extent that the element of "appreciation or knowledge of the benefit" required some showing that Schuster was aware that it had received an additional gain beyond what it was supposed to receive for the work, the evidence supports such a finding. The PLA and the S.3 schedule established that MGM, the developer, had committed to have all non-union contractors working on the MGM Project pay the equivalent of the state prevailing wage rates; Schuster had specifically agreed with Whiting-Turner, as reflected in the Project Manual, to pay its workers pursuant to a schedule derived from the state prevailing wage rates for Prince George's County; and the S.3 schedule actually mirrored those rates. The S.3 schedule did not state that the fringe benefit rate would be paid only on straight-time hours. Notably, Schuster's interrogatory responses, Trial Ex. 104, reflect that Schuster had previously paid overtime fringe benefit amounts on certain projects, and Burns testified that Schuster pays fringe benefit amounts on overtime hours for federal prevailing wage projects. Thus, Schuster was fully aware that contractors, under certain circumstances, pay overtime fringe benefit amounts, and that being able to refrain from paying overtime fringe benefit amounts reduces its labor costs and thus provides it with a financial benefit.

Although the S.3 schedule did not explicitly state whether or not the fringe benefit payments had to be made on overtime hours, there was evidence presented at trial that Whiting-Turner and Schuster understood and had effectively agreed that in meeting the requirement to pay the applicable state prevailing wage rates, Schuster would follow the rules that the Maryland Department of Labor, Licensing and Regulation ("DLLR") applied in enforcing the state

prevailing wage laws on state-funded projects, including as to fringe benefit payments on overtime hours. Specifically, Burns testified that on March 1, 2016, before all of Schuster's work on the MGM Project had been completed, a Whiting-Turner representative had inquired of her as to why Schuster was not paying the overtime fringe benefit amounts. In response, Burns sent Whiting-Turner several documents reflecting relevant DLLR guidance, including a document from a 2011 audit during which the DLLR found that Schuster had failed to comply with the state prevailing wage law but did not include unpaid overtime fringe benefit amounts in calculating the wages owed by Schuster. Based on that information, Whiting-Turner did not contest Schuster's failure to pay the overtime fringe benefit amounts. From these facts, the jury could reasonably conclude that both Whiting-Turner and Schuster understood and agreed that in fulfilling the requirements of the Project Manual that subcontractors pay their employees pursuant to the S.3 schedule, they would follow the DLLR's position on the issue of whether contractors are required to pay the overtime fringe benefit amounts on state projects applying the state prevailing wage rates.

There was also evidence that the DLLR, in fact, required that contractors pay the overtime fringe benefit amounts on projects governed by the state prevailing wage law. James Tudor, a DLLR Program Administrator who has responsibility for enforcement of the state prevailing wage laws, testified that on a state-funded project requiring payment of the applicable prevailing wage rates, the DLLR requires that fringe benefit amounts be paid on both straight-time and overtime hours. He acknowledged that prior to 2012, including on two audits of Schuster, the DLLR had used a spreadsheet during the audits that erroneously failed to identify and calculate unpaid overtime fringe benefit amounts as part of the unpaid wages owed, but he testified that the error was corrected in early 2012. Significantly, Tudor testified that beginning in 2012, he regularly conducted training sessions for employers on the Maryland prevailing wage law requirements in

8

which he instructed them on the requirement to pay overtime fringe benefit amounts, and he provided a copy of his standard presentation, which included a slide illustrating that requirement. Trial Ex. 10.

Burns acknowledged that she attended at least one of those training sessions at some point after Schuster's work on the MGM Project was substantially completed, which was around the end of 2015, but before it was entirely completed. Although she testified that she did not recall that the presentation informed her of this fact, the jury was not required to accept that testimony. Based on Tudor's testimony, it could infer that Burns was informed of that requirement at the presentation she attended. Moreover, Burns acknowledged that she heard Tudor state during his deposition in 2018 that overtime fringe benefit amounts were required to be paid under the Maryland prevailing wage law. Thus, the evidence established that in 2015 or 2016, and certainly no later than 2018, Schuster was aware that for a state prevailing wage law project, the DLLR required contractors to pay the overtime fringe benefit amounts. Where the evidence supports the conclusion that Schuster and Whiting-Turner had agreed to follow the DLLR requirements on issues such as payment of the overtime fringe benefit amounts, Schuster therefore knew and appreciated that by not paying the overtime fringe benefit amounts to its workers on the MGM Project, it was receiving a financial benefit.

### C. Inequitable Retention of the Benefit

On the third element, the evidence was sufficient for a reasonable jury to conclude that Schuster's retention of that benefit—the work at rates not including the overtime fringe benefit amounts—was unjust. Whether circumstances make it inequitable for the defendant to retain the benefit without repaying its value is a fact-specific question that a jury must decide using its sense of justice, equity, and good conscience, upon consideration of all of the parties' circumstances,

including the parties' interactions, intentions, and reasonable expectations. *Hill*, 936 A.2d at 355 ("The final element of an unjust enrichment claim is a fact-specific balancing of the equities."); *Everhart*, 422 A.2d at 31 ("Unjust enrichment is defined as 'the unjust retention of a benefit to the loss of another . . . against the fundamental principles of justice or equity and good conscience.'" (quoting 66 Am. Jur. 2d *Restitution & Implied Contracts* § 3 (1973)); 66 Am. Jur. 2d *Restitution and Implied Contracts* § 3 (2021) ("[U]njust enrichment serves to effectuate the intentions of parties or to protect their reasonable expectations, and thus looks to the particular parties to a transaction rather than a universal, state imposed obligation."). Whether one party was legally or otherwise entitled to the benefit may also be considered. *See Plitt*, 219 A.2d at 241. However, to satisfy this element, it is not necessary that there was a binding contract or other formal legal obligation between the parties. *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 606-07 (Md. 2000) (stating that unjust enrichment is a quasi-contract cause of action, and that such an action "permit[s] recovery" "in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery"); 66 Am. Jur. 2d *Restitution and Implied Contracts* § 3 ("Unjust enrichment describes a recovery for the value of the benefit retained when there is no contractual relationship but when, on the grounds of fairness and justice, the law compels the performance of a legal and moral duty to pay."). Although whether one party engaged in misconduct or was at fault may be considered, it is not necessary that the defendant was at fault. *Hill*, 936 A.2d at 352. It may be deemed unjust for a defendant to retain a benefit even if the plaintiff conferred the benefit by mistake or the defendant received the benefit honestly or by mistake. *Id.* at 352, 355.

Here, there was evidence upon which the jury could reasonably conclude that Schuster's retention of the benefit was inequitable. First, as discussed above, where the evidence at trial

supported the conclusion that Whiting-Turner and Schuster understood and agreed that the DLLR requirements on whether to pay overtime fringe benefit amounts on state prevailing wage projects would be applied to Schuster's payment of its workers pursuant to the S.3 schedule, and Schuster then learned that the DLLR actually required payment of those amounts on such state projects, the jury could reasonably conclude that it was unjust and inequitable for Schuster to fail to pay the overtime fringe benefit amounts.

Second, the context of Schuster's agreement with Whiting-Turner was that MGM, as noted in the PLA, had voluntarily committed that all non-union contractors working on the MGM Project would be required to pay, at a minimum, the prevailing wage rates applicable to Prince George's County as set by the DLLR. Wendy Schleich, Schuster's Chief Estimator, acknowledged that Schuster was aware of the PLA when it bid on the MGM Project. Although Schuster has argued that it is a non-union employer and therefore is generally not subject to any prevailing wage requirements, here, Schuster was working on a project for which the developer had specifically agreed that all non-union workers would be paid no less than the state prevailing wage rates, an agreement that can reasonably be inferred to have been for the purpose of preventing unfair competition with union workers. Schuster had received a subcontract based on an agreement with Whiting-Turner that it would pay at those rates. Under these circumstances, the jury could reasonably conclude that it would be unjust and inequitable for Schuster to have received the benefit of obtaining a subcontract on the MGM Project and then to pay Plaintiffs less than they would have received on a state project governed by the Maryland state prevailing wage law.

Third and most importantly, the evidence established that Schuster broadly informed its workers that the MGM Project was a "scale" job and posted the S.3 schedule as the scale that was followed. Donald Wickesser, Schuster's Director of Construction, testified that Schuster told its

workers that the MGM Project was a "scale project" and showed them the S.3 schedule. 6/15/21 Trial Tr. at 10, ECF No. 303. He also testified that when referring to a construction project, the terms "scale" and "prevailing wage" are interchangeable terms. 6/14/21 Trial Tr. at 65-66, ECF No. 302. Likewise, Sulmy Contreras, an employee liaison for Schuster, testified that she had told employees that the MGM Project was a "scale job" with higher pay rates than Schuster's regular pay rates, and that the S.3 schedule was posted on every trailer at the job site. 6/15/21 Trial Tr. at 192-93. Significantly, Gonzalez testified that one of the reasons he agreed to work for Schuster was that he understood that it was a "scale" job, which he believed from prior experience meant that the employer would provide the highest pay that would be paid by the state or federal government. *Id.* at 157, 170.

Although Schuster argues that the term "scale" can have various meanings, the jury could reasonably accept Gonzalez's understanding of what "scale" meant in this context, which is consistent with Wickesser's statement that "scale" and "prevailing wage" are interchangeable terms, particularly where the S.3 schedule specifically referenced the Maryland prevailing wage rates for Prince George's County. In turn, the jury could conclude that Schuster's repeated references to the MGM Project as a "scale project" subject to the S.3 schedule had given its workers the false impression that Schuster was paying what workers received on a state prevailing wage project when, in fact, it did not because such workers would have received the overtime fringe benefit amounts. The jury could therefore conclude that it was unjust to have failed to make such payments.

In the face of this evidence, Schuster's arguments center on the claim that there can be no unjust enrichment because the evidence does not show that Schuster had any legal obligation to pay the overtime fringe benefit amounts, including because the S.3 schedule specifically stated

12

that "This Project is not subject to State law regarding the payment of prevailing wages or the Davis-Bacon Act," Trial Ex. 1, and because Tudor's testimony on the DLLR's position on whether payment of the overtime fringe benefit amounts is required should not be deemed to be a definitive statement of the law. These arguments miss the mark. The cited language establishes only that the MGM Project was not a state-funded prevailing wage project subject to an enforcement action by the DLLR, a fact that was undisputed at trial. The obligation to pay pursuant to state prevailing wage rates instead arose from Schuster's agreement with Whiting-Turner. Whether the DLLR's interpretation of how to apply the state prevailing wage law requirements is controlling authority is not the issue, because the evidence at trial showed that the parties had effectively agreed to follow the DLLR's guidance on issues such as the payment of overtime fringe benefit amounts. The fact that there was no contractual agreement between Schuster and Plaintiffs on this issue does not bar recovery because on an unjust enrichment claim, the lack of a legal obligation not to retain a benefit is not a complete defense. *See Cnty. Comm'rs of Caroline Cnty.*, 747 A.2d at 606; 66 Am. Jur. 2d *Restitution and Implied Contracts* § 3. Indeed, an unjust enrichment claim generally is not even available when there is an actual contract between the parties governing the matter at issue. *See Cnty. Comm'rs of Caroline Cnty.*, 747 A.2d at 607. Here, the question is whether in light of all of the circumstances, including the parties' reasonable expectations and considerations of fairness and justice, the jury could reasonably conclude that it was unjust for Schuster to have entered into an arrangement under which it obtained a lucrative contract on the condition that it pay the state prevailing wage rates to its workers, it led its workers to believe that it was paying them in the same way that they would have for a state-funded prevailing wage project, but then it unilaterally withheld certain payments that it would have had to pay if it was in fact paying workers

on a state prevailing wage rate project. For the reasons discussed above, there was sufficient evidence to support such a conclusion.

Finally, separate and apart from questions related to the DLLR's position that overtime fringe benefit amounts must be paid on a state prevailing wage project, the jury could find that the failure to pay the overtime fringe benefit amounts was inequitable because it deprived workers of the cash equivalent of in-kind fringe benefits. The evidence established that the hourly fringe benefit payment figures set forth in the S.3 schedule were designed to convert into cash payments the value of the package of fringe benefits that a worker could elect to receive in-kind, such that an employee who worked a 40-hour week each week for a full year—2,080 hours—would receive the cash equivalent of those fringe benefits for one year. Because, as stipulated to by the parties, no members of the overtime fringe benefits class actually worked 2,080 or more straight-time hours in a year for Schuster on the MGM Project, they did not receive the full value of the in-kind fringe benefits, even if they had actually worked 2,080 total hours but some were overtime hours. For those who did not work 2,080 total hours, they did not receive the incremental portion of the value of the in-kind fringe benefits attributable to any hours classified as overtime hours. Under these facts, where the overtime fringe benefit amounts would have contributed to, rather than exceeded, the full value of the in-kind benefits, a reasonable jury could deem it inequitable for overtime fringe benefits class members to have worked those hours without earning the incremental portion of the value of the in-kind fringe benefits simply because they were classified as overtime hours. This evidence provided an additional basis on which the jury could reasonably infer that Schuster's receipt of the overtime fringe benefits class members' services without paying the overtime fringe benefit amounts was inequitable.

In the end, the evidence supports the conclusions that (1) MGM, Whiting-Turner, and Schuster had all committed that subcontractors like Schuster would pay pursuant to the state prevailing wage rates; (2) Schuster, by repeatedly referring to the MGM Project as a "scale" project and providing the S.3 schedule, misled workers into believing falsely that they were being paid in a manner consistent with the state prevailing wage law; (3) after justifying its non-payment of the overtime fringe benefit amounts by invoking the DLLR's position on this issue, Schuster learned that it was not, in fact, paying in a manner consistent with the DLLR's requirements for compliance with the state prevailing wage law; and (4) Schuster nevertheless persisted in unilaterally refusing to pay or reimburse such amounts without any justification other than their own, unilateral disagreement with the DLLR's requirement. Under these circumstances, the jury could reasonably conclude that it was unjust for Schuster to have retained the benefit of the work of the overtime fringe benefit class members without reimbursing them for those unpaid amounts. The Motion will therefore be denied.

## CONCLUSION

For the foregoing reasons, the Motion for Judgment as a Matter of Law, ECF No. 313, will be DENIED. A separate Order shall issue.

Date:  January 21, 2022

THEODORE D. CHUANG
United States District Judge